## BANGOR FRUIT EXCHANGE v. BANGOR CANNING CO.

1. ACCOUNTING—CONTRACTS—"ACTUAL EXPENSE" HELD NOT TO INCLUDE OVERHEAD.

In a suit by fruit growers against a canning company for an accounting under a contract whereby plaintiffs were to grow and deliver fruit and defendant was to receive it and either can or sell fresh on a co-operative basis, "charging for same the actual expense of canning and selling same, and an additional charge of 10 per cent. if canned, and 5 per cent. if sold fresh," the court below properly disallowed defendant's claim for fire and liability insurance, taxes, depreciation of machinery and equipment, depreciation of buildings, and traveling and advertising expenses, since said items were clearly intended to be covered by the commission provided for.[1]

2. SAME—NO LIABILITY FOR LOSS IN MARKETING.

Where the contract provided that the plaintiffs should appoint a committee to co-operate with defendant, but said committee was never appointed, and the defendant exercised its best judgment in selling the canned fruit, it may not be held liable for the loss sustained on fruit held for

[1]Agriculture, 2 C. J. § 26a (1926 Anno).

a higher price, but which eventually had to be sold for less.[2]

3. SAME—ITEM FOR TRUCKING PROPERLY ALLOWED.
    Although there is not much proof to sustain the allowance by the court of an item for trucking, where it does not seem to have been questioned on the hearing, and the court below gave all the items close scrutiny, and the charges as they appear in defendant's books are not in the record, the allowance of the court below will not be disturbed, on appeal.[3]

Cross-appeals from Van Buren; Des Voignes (L. Burget), J. Submitted October 17, 1924. (Docket No. 112.) Decided December 10, 1924.

Bill by the Bangor Fruit Exchange and others against the Bangor Canning Company and others for an accounting. From the decree rendered, all parties appeal. Affirmed.

*Thomas J. Cavanaugh,* for plaintiffs.

*William J. Barnard,* for defendants.

SHARPE, J. The plaintiffs are farmers and fruit growers. The defendant corporation is engaged in canning and shipping fruit. In 1922 it was operated by the defendant Dalton F. Carpp. During the summer of that year a written contract was entered into by the several plaintiffs, as growers, with the canning company, whereby the plaintiffs individually agreed "to grow and deliver" to it their entire crop of peaches, estimated at a stated number of bushels, upon the following terms and conditions:

"That the party of the first part may either can or sell fresh said produce on a co-operative basis charging for same the actual expense of canning and selling same and an additional charge of 10 per cent. if canned, and 5 per cent. if sold fresh. It is further agreed

[2]Agriculture, 2 C. J. § 26a (1926 Anno); [3]Accounts and Accounting, 1 C. J. § 134.

that the party of the second part shall deliver said produce in accordance with stipulations made by a growers committee, organized from among the growers to co-operate with the board of directors of the said party of the first part.   Final settlement will be made according to a certified audit."

In some of the contracts there was provision for delivery of "about" a certain number of bushels and "balance of crop if he sees fit."   There was no compliance on the part of the plaintiffs with the provision for a "growers committee."   The contract was construed by the parties to also include plums.   A large quantity of peaches and plums was delivered by plaintiffs under these contracts and accepted by the company without suggestion or complaint as to their quality.   The company failing to make settlement or furnish "a certified audit," plaintiff began this suit for an accounting and for a decree for the amount due them.

The trial court found that there was due plaintiffs collectively the sum of $2,139.24, and entered a decree therefor.   Both parties appeal.   Defendants claim that the proofs show that a loss was sustained in handling the fruit under the terms of the contract, while plaintiffs claim the decree should have awarded them $4,665.13.

The record contains an audit of the books of the company by Ernst & Ernst.   From it the court made the following finding:

| | "Peaches | Plums | Total Basis of Proration |
|---|---|---|---|
| GROSS SALES | | | |
| Canned Fruit | $7,488.23 | $6,847.80 | $14,336.03 |
| Fresh Fruit | 49.00 | | 49.00 |
| TOTAL | $7,537.23 | $6,847.80 | $14,385.03 |
| Less: Returns and Allowances | 85.10 | 90.00 | 175.10 |
| NET SALES | $7,452.13 | $6,757.80 | $14,209.93" |

Defendants had on hand at the time the audit was made peaches of the then value of $2,008.12 and plums of the then value of $1,627.87. These were afterwards sold, the receipts therefor being but $1,164.21. The court found that the total amount which defendants had received and with which they should be charged was $15,374.14. He allowed defendants for their expense in handling the fruit $11,699.94, for commission on canned fruit 10 per cent., $1,532.51, on fresh fruit $2.45, a total of $13,234.90, and gave plaintiffs decree for the difference between these amounts, $2,139.24.

The above figures as to receipts by defendants are taken from the audit of their books, and, while their counsel here makes claim that peaches "consigned to the dump" because unmarketable were not considered, we are of the opinion that this claim is not well founded. The audit, however, showed a total charge exceeding the receipts of about $1,000. This difference is due to the refusal of the court to allow items for fire and liability insurance, taxes, depreciation of machinery and equipment, depreciation of buildings, and traveling and advertising expenses. The trial court was clearly right in refusing to allow these charges. The contract provided that the company should receive "the actual expense of canning and selling" the fruit delivered and "an additional charge of ten per cent. if canned, and five per cent. if sold fresh." It seems clear that this commission was intended to cover the above items. Of the decree the defendants have no cause for complaint.

Plaintiffs insist that the defendants should be charged with the then value of the fruit on hand at the time the audit was made; that it was their duty to have sold it at that time and, if they kept it to speculate upon, they must stand the loss. Under the contracts, the duty of selling the fruit at the best

price obtainable rested on the canning company.   Had the plaintiffs appointed the committee provided for in the contract, the company would doubtless have conferred with them as to when sales should be made. They did not do so and, it appearing, as found by the trial court, that the company acted in good faith and not only received no advantage from the delay in making sale but lost the excess commission it would have received had the sale been earlier made, we see no reason for charging the company with moneys it did not actually receive.

The court allowed an item of $382.70 for "Truck expenses and repair."   Plaintiffs insist that this should be reduced to $78.26.   It does not seem to have been questioned on the hearing.   There is little proof to support its allowance.   It is apparent, however, that the trial court gave all these items close scrutiny. The charges as they appear in defendants' books are not in the record.   We are unwilling to disturb the allowance as made by him.

The decree is affirmed.   Both parties having appealed, no costs will be allowed.

CLARK, C. J., and MCDONALD, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.